HARRY TROLL, Public Administrator, in Charge of Estate of JOHN DOYLE, Respondent, v. ST. LOUIS PORTLAND CEMENT COMPANY, Appellant.

St. Louis Court of Appeals, November 7, 1911.

1. **MASTER AND SERVANT: Injuries to Servant: Negligence of Foreman: Sufficiency of Evidence.** In an action against a master for personal injuries sustained by a servant, it appeared that plaintiff and certain fellow-servants, in charge of a foreman, were engaged in taking down a smokestack above the roof of defendant's building. The stack was held in place by a heavy iron band, from which guy wires were made fast to various parts of the building. The foreman directed one of plaintiff's fellow-servants to loosen the band without first loosening the guy wires, notwithstanding he was warned that that was unsafe. Plaintiff was engaged with some blocks and tackle nearby, and the bolt that held the band having been broken by the servant in charge of that work, the band immediately sprung from the stack, jumped to one side, and fell on and injured plaintiff. *Held,* that the foreman was negligent in directing the loosening of the band without first loosening the guy wires, and also in ordering plaintiff to work on the roof immediately beneath the band, without warning him of the danger or of the order given the other servant to loosen the band.

2. **NEGLIGENCE: Concurring Causes: Accident: Master and Servant.** Where a master negligently ordered a servant to work on the roof of a building immediately beneath an iron band on a smokestack, where he was likely to be struck by the band in case it should fall, and negligently directed a fellow-

servant to loosen the band without disconnecting the guy wires attached to it, the fact that the band broke earlier than was anticipated by the servant ordered to loosen it, so that he was unable to warn the servant below him immediately before the band was loosened, as he had intended, would not relieve the master from liability for injuries received by the servant working below such band, by reason of its breaking, since, at best, the premature breaking was an accident which concurred proximately with the master's negligence in producing the injury.

3. ————: ————: "Accident" Defined. An "accident" is an event that occurs without one's foresight or expectation.

4. ————: ————: Accident. A person who is guilty of negligence which concurs proximately with an accidental cause to produce an injury is liable therefor.

5. ————: Instructions: Authorizing Recovery if Negligent Acts Contributed to Cause. In a negligence case, where several separate acts of negligence are counted on and proved, which, operating together, contribute and concur in a sum total of negligence proximately causing the injury sued for, it is not error for an instruction submitting such acts of negligence to authorize a finding for plaintiff if the jury believe they directly "contributed to cause" the injuries, provided the instruction clearly excludes plaintiff's negligence from the consideration of the jury as a contributing cause.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster*, Judge.

AFFIRMED.

*Watts, Williams & Dines* and *Wm. R. Gentry* for appellant.

(1) The court erred in overruling the defendant's demurrer to the evidence. Harper v. Railroad, 187 Mo. 575; Herbert v. Ferry Co., 107 Mo. App. 287; Banks v. Railroad, 40 Mo. App. 458; Waller v. Railroad, 59 Mo. App. 410; Kappes v. Shoe Co., 116 Mo. App. 154; Henry v. Railroad, 76 Mo. 293; Haley v. St. Louis, 179 Mo. 35; Railroad v. Kellog, 94 U. S. 469. (2) The court erred in giving an improper instruction at the request of the plaintiff. The vice of

this instruction is the use of the expression, *"and thereby directly contributed to cause the injuries to the plaintiff mentioned in the evidence."* This expression in an instruction has been repeatedly condemned by our Supreme Court and Court of Appeals. Hof v. Transit Co., 213 Mo. 445; Krehmeyer v. Transit Co., 220 Mo. 639; Schmidt v. Transit Co., 120 S. W. 96.

*A. R. & Howard Taylor* for respondent.

NORTONI, J.—This is a suit for damages accrued to plaintiff's intestate on account of personal injuries received by him through the alleged negligence of defendant. The verdict and judgment were for plaintiff in the circuit court and defendant prosecuted the appeal. Since the appeal was perfected, plaintiff in the action departed this life, and the suit has been revived and now proceeds in the name of Mr. Troll, his administrator.

Defendant, incorporated, is a manufacturer of cement, and owned and maintained a large building in St. Louis county which it employed in its business. Above this building it maintained a very large iron smokestack, about four and one-half feet in diameter, which towered as much as forty-five feet above the roof of the building. At the time decedent received his injury, he was in defendant's employ as a laborer and engaged, along with about sixteen other men, all under the immediate command and charge of Smith, the foreman, in preparing to take down or remove the smokestack above mentioned. In order to accomplish this result, it was necessary to erect a large pole, known as a "gin pole" on the roof of defendant's building, over which the smokestack protruded. On this gin pole, block and tackle or pulleys with ropes were to be attached, and decedent, with several others, was engaged about this pole lifting the pulleys or blocks together with the ropes from the ground to the roof

of the building where the gin pole was erected. The gin pole was situate on the roof of the building, about nine feet distant from the huge smokestack. About twenty-five feet above the roof of the building the smokestack was encircled with an iron band, which is said to be one-half inch thick and two inches wide. This iron band was in four separate parts, each of which, we understand, constituted a quarter circle. These four parts or quarter circles, which constituted the iron band when fastened together, were bolted one to the other at the ends. After being so bolted, they constituted the iron band which encircled the smokestack on the outside, about twenty-five feet above the roof of the building. On each separate piece or quarter circle of this iron band, there was made fast a wire or cable, which is spoken of in the evidence as a guy wire, for the purpose of holding the smokestack in position. These four several guy wires were made fast to the several corners of the building and operated to brace or hold the smokestack in place. While decedent was engaged at his work on the roof about the gin pole and within a few feet of the smokestack, defendant's foreman, Smith, ordered Fuller, another workman, to ascend the smokestack on an iron ladder, which was constructed upon the side of the same, and loosen, by means of a steel hammer, the bolt which connected two parts of the band together, to the end of removing the band from the smokestack. Fuller testified for decedent to the effect that he stated to Smith at the time that it was dangerous to do so unless the guy wires were cut or loosened, as in their present condition they would occasion the band to jump like a spring when its parts were dissevered. Notwithstanding this, the foreman directed Fuller to proceed to perform the task as he told him, without loosening the guy wires, and he did so.

For decedent, the evidence is that he was wholly without knowledge as to this matter, as he did

not hear Smith direct Fuller to ascend the smokestack for the purpose, and did not see him so do. It is said decedent was engaged in assisting to raise some blocks from the ground by means of a rope with his back toward the smokestack at the time. Upon Fuller's ascending the ladder and striking the bolt, with the purpose of dissevering the band, as directed by the foreman, the bolt suddenly broke, after three blows from the hammer. The evidence goes to prove that the band, immediately upon being so dissevered, was thrown from its position forward with great force, acting as a spring, and that this was occasioned because the guy wires were not cut or loosened before the band was dissevered. It is said had those wires been cut or loosened theretofore, the band would have passed down the smokestack without springing from it, whereas, under the circumstances, it jumped to one side and fell upon decedent with such force as to crush his skull. Decedent received numerous severe and permanent injuries as a result of this heavy iron band being thus thrown upon him from above and in his rear, and the jury awarded him a verdict for $6207.

The specifications of negligence contained in the petition and relied upon for a recovery are two in number, and both relate to a breach of duty on the part of defendant's vice-principal, the foreman. It is averred, substantially, that Smith was negligent, in that he ordered Fuller to go aloft on the smokestack and dissever the large iron band above decedent, without first loosening or cutting the guy wires and under circumstances which obviously threatened decedent's safety, and was negligent, too, in ordering decedent to work on the roof of the building about the gin pole immediately beneath the iron band and where the foreman might well know it would likely spring upon and injure him. The petition avers that these two specifications of negligence concurred and each contributed

to his injury.   The evidence abundantly sustains both.
Indeed, it suggests sheer recklessness on the part of
the foreman touching the whole matter.   It is made
quite clear in the evidence that, had the guy wires been
loosened or cut as suggested by Fuller to the foreman
before the band was dissevered, the probability of dan-
ger to workmen assembled on the roof near the stack
would have been but slight; while performing the task
as directed by Smith, without heed to the guy wires,
rendered it highly dangerous, and it would seem that
anyone should foresee or anticipate that an injury was
likely to follow.   No one can doubt that the foreman
omitted to exercise ordinary care for decedent's safety,
when, without warning of the danger or notice of the
order to Fuller, he ordered him to work on the roof im-
mediately beneath the operations upon this iron band,
one-half inch thick and four and one-half feet in diam-
eter, twenty-five feet above, under circumstances likely
to precipitate it forward.

But it is argued, though the foreman was negli-
gent in respect to both orders given, in the circum-
stances of the case, such negligence was not the proxi-
mate cause of the injury and the court should have
directed a verdict for defendant because Fuller testi-
fied in his cross-examination that the bolt broke earlier
than he anticipated and unexpectedly precipitated the
iron band forward without giving him an opportunity
to warn the men below.   It is true Fuller said that he
did not expect the bolt holding the two parts of the
iron band together to break so suddenly and that he
intended to call out a warning to those below about the
time and immediately before the band was finally dis-
severed.   But his purpose as to this was unexpectedly
defeated through the sudden breaking of the iron bolt
(which he referred to as being ''rotten'') under the
third heavy blow from his hammer.   As before said,
Fuller testified for decedent and these statements ap-
pear in his cross-examination.   The argument is that

this evidence conclusively shows the injury to decedent resulted proximately from the unexpected breaking of the bolt under Fuller's heavy blows earlier than he anticipated, and that, therefore, the negligent orders of Smith were remote in the chain of causation which culminated in the hurt of decedent. In this connection, special stress is laid upon the warning which Fuller intended to give, had the bolt not broken so unexpectedly. Conceding to defendant the full measure of this evidence, it is obvious that it introduces into the matter nothing more than the element of accident, for an accident is defined by Webster to be the happening of an unexpected event, or an event that takes place without one's foresight or expectation. In this view, it may be that the unexpected or accidental breaking of the bolt earlier than anticipated contributed to the injury of decedent, for possibly had the intended warning been given, he would have removed himself from the danger zone. But though such be true, if defendant's negligence concurred proximately even with an accidental cause, then liability attaches against it for the result identically as if its negligence were the sole cause of the injury. Such is the accepted rule of decision as is well established. [Schmidt v. St. Louis Transit Co., 140 Mo. App. 182, 120 S. W. 96.] The principle is well illustrated in Brennan v. City of St. Louis, 92 Mo. 482, 486, 487, 2 S. W. 481, where it appears plaintiff was precipitated into an excavation adjacent to the public street of the city through the accidental stumbling of a little girl against her, which occasioned the fall. Notwithstanding such accidental cause, the Supreme Court declared liability attached against the city if its negligence in permittng the excavation to remain adjacent to the public street concurred therewith. For authorities to the same effect, see Bassett v. City of St. Joseph, 53 Mo. 290; Hull v. Kansas City, 54 Mo. 598. Though the bolt which occasioned the iron band to suddenly dissever unexpect-

edly broke under the third blow from the hammer in the hand of Fuller and thus accidentally precipitated the band upon decedent, it is obvious that the accident would not only not have happened but that decedent would not have been injured except for the negligent order of Smith in sending Fuller to perform the task and ordering decedent to work immediately beneath without notice to him of Fuller's undertaking. It is clear enough that, but for such negligent orders—the one given to Fuller and the other to decedent—the injury would not have occurred, and when such appears to be the fact, then defendant's negligence is viewed in the eye of the law as a proximate and efficient cause of the injury and as such entails liability therefor, even though another cause contributed thereto as well. [See Miller v. United Rys. Co., 155 Mo. App. 528, 134 S. W. 1045.] The court did not err in refusing to direct a verdict for defendant.

At the instance of decedent, the court gave one long instruction which very properly hypothesized all of the facts and submitted the questions of defendant's negligence touching both specifications thereof in the petition, that is to say, the negligence of the foreman in ordering Fuller to perform the task without loosening the guy wires and his order as well in directing decedent to work immediately beneath and in such a dangerous situation without notice or warning that Fuller was engaged, or about to be, in dissevering the iron band above. The instruction authorizes a recovery for decedent if the jury should find from the evidence that he was in the exercise of ordinary care on his part and that such orders by the foreman were negligently given and directly contributed to cause the injuries of decedent mentioned in the evidence. The employment of the word "contributed" in this instruction is criticized and it has been frequently condemned by the courts in those cases where there is for consideration only the negligence of defendant and plain-

tiff, for in such cases the negligence of defendant must be the sole cause of the injury in order to entitle plaintiff to recover. In other words, in such cases, the mere contributing to an injury by the negligence of defendant is not sufficient to authorize a recovery, for it may be plaintiff's negligence contributed thereto as well, in which event, of course, no recovery may be allowed. But it is certainly competent to employ the word "contributed" where the proof tends .to show that defendant's negligence concurred with that of a third party, the act of God or a mere accident, and contributed therewith to produce the injury. [See Schmidt v. Transit Co., 140 Mo. App. 182, 120 S. W. 96.] From what has been said above, it appears defendant earnestly insists that there was a third cause which operated in causing the injury here and this we have denominated as an accidental cause and it is regarded as having concurred as a cause of and contributed to the hurt. If such be true, then it may be the instruction reckoned with that matter and should not be condemned as was said in Fleddermann v. St. Louis Transit Co., 134 Mo. App. 199, 113 S. W. 1143, where the contributing factor was the noise of trains in the valley. But aside from this, we believe the instruction, in employing the word "contributed," referred to the two separate negligent orders given by defendant's foreman which no doubt both concurred in and contributed to the injury of decedent. Such is the theory of the petition, for it recites the two specifications of negligence and charges that "said acts of negligence directly contributed to cause said injuries to plaintiff." If decedent was without fault on his part and his injury occurred under circumstances occasioned through two separate negligent orders of the foreman, which concurred in and contributed directly to it, then he was certainly entitled to recover on that account and it was not error to so inform the jury. Where there are several separate specifications of neg-

ligence as here, which, operating all together, contribute and concur in a sum total of negligence proximately to the injury of another, we believe it is proper enough to so treat with them in the instruction, provided plaintiff's negligence is clearly excluded from consideration on that score by the instruction. [See Garrett v. Wabash R. Co., 159 Mo. App. 63, 139 S. W. 252, 255.] The instruction under consideration required the jury to find as a condition precedent to defendant's liability that decedent exercised ordinary care for his own safety and then treated with the alleged separate negligent orders of the foreman as acts of negligence which each contributed its part to the injury. In this view, the instruction may be approved and so it is. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Caulfield, J.*, concur.